UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| SUN CONTAINER, INC., | ) | Case No. 09-24949 |
| | ) | |
| Debtor. | ) | |

FINAL AGREED ORDER AUTHORIZING
LIMITED USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION TO U.S. BANK, N.A.

This cause coming on to be heard for a final hearing upon a motion (the "Motion") dated July 10, 2009 of Sun Container, Inc. ("Debtor"), wherein the debtor and debtor-in-possession in the above-referenced chapter 11 case (the "Case") sought authorization under Section 363 of the Bankruptcy Code to use cash collateral on an interim basis, as that term is defined in section 363 of the Bankruptcy Code ("Cash Collateral"), upon which U.S. Bank National Association ("U.S. Bank") asserts a first priority security interest and lien; and the Court having conducted a preliminary hearing on July 13, 2009 and considered the offers of proof and the statements of counsel, and, having granted certain limited relief on the terms and conditions contained in the Interim Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection entered by the Court on July 15, 2009, as was necessary and essential to enable the Debtor to continue to operate its business pending a final hearing on the Motion; and the parties having stipulated and agree to a final Order for the Debtor to use Cash Collateral and grant adequate protection to U.S. Bank, subject to the following terms and conditions contained herein, and good cause appearing therefor,

THE PARTIES STIPULATE AS FOLLOWS:

A. On July 9, 2009 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11, Title 11, of the United States Code (the "Bankruptcy Code"), and has continued as a debtor-in-possession thereafter.

B. On July 23, 2009, the Office of the United States Trustee appointed a Committee of Unsecured Creditors (the "Committee").

C. Prior to the Petition Date, U.S. Bank made certain loans to the Debtor and advanced credit to the Debtor, pursuant to and in accordance with the terms and conditions of (a) a certain Revolving Credit Agreement, dated as of March 15, 2001, by and between Debtor and U.S. Bank, as thereafter amended from time to time, under which the Debtor has executed and delivered to U.S. Bank a certain Revolving Credit Note, dated as of March 15, 2001, in the original principal amount of $750,000.00, as amended from time to time, and certain other documentation executed in connection therewith prior to the Petition Date (collectively, the "Revolving Line of Credit Loan Documents"), and (b) a certain Term Loan Agreement, dated as of April 24, 2002, by and between Debtor and U.S. Bank, as thereafter amended from time to time, under which the Debtor has executed and delivered to U.S. Bank a certain Term Note, dated as of April 24, 2002, in the original principal amount of $430,000.00, as amended from time to time, and certain other documentation executed in connection therewith prior to the Petition Date (collectively, the "Term Loan Documents" and, together with the Revolving Line of Credit Loan Documents, the "Loan Documents").

D. U.S. Bank asserts, and the Debtor concedes, that the Debtor was, as of the Petition Date, justly and lawfully indebted to U.S. Bank (a) under the Revolving Line of Credit Loan Documents in the aggregate principal amount of approximately $750,000, together with accrued and unpaid interest and costs and expenses, including, without limitation, attorneys' fees, other professional fees and disbursements (collectively, the "Revolving Line of Credit Indebtedness"),

and (b) under the Term Loan Documents in the aggregate principal amount of approximately $223,000, together with accrued and unpaid interest and costs and expenses, including, without limitation, attorneys' fees, other professional fees and disbursements (collectively, the "Term Loan Indebtedness" and together with the Revolving Line of Credit Indebtedness, the "Prepetition Indebtedness"). U.S. Bank further asserts and the Debtor further concedes that the Debtor is liable to U.S. Bank for the Pre-Petition Indebtedness.

E. U.S. Bank asserts and the Debtor concedes that pursuant to, inter-alia, (a) a certain Business Security Agreement, dated as of March 15, 2001, (b) a certain Business Security Agreement, dated as of March 29, 2001, (c) a certain Business Security Agreement, dated as of April 24, 2002, and (d) a certain Mortgage, Security Interest and Assignment of Rents and Leases, dated as of April 24, 2002, (collectively, the "Security Agreements") Debtor has granted U.S. Bank first priority liens upon and security interests in substantially all assets of the Debtor, and all proceeds and products thereof (collectively, the "Collateral").

F. A need exists for the Debtor to obtain funds and use the Collateral, including Cash Collateral, in order to assure the orderly administration of its estate. Without such funds, the Debtor will be unable to pay insurance, payroll, payroll expenses, rent, utility charges, general overhead and purchase necessary materials. Consequently, without such funds, the Debtor will be unable to operate its business, reorganize its business, sell its business as a going concern or proceed with an orderly liquidation.

G. Notice of the requested relief has been provided by the Debtor to the Office of the United States Trustee, substantially all of the Debtor's twenty (20) largest unsecured creditors and U.S. Bank. Given the nature of the relief sought, the Court concludes that sufficient and adequate notice of the requested relief has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014 and Section 102(1) of the Bankruptcy Code as required by Sections

361 and 363 of the Bankruptcy Code, and that no further notice of, or hearing on, the relief sought and the limited relief granted herein is necessary or required.

H. U.S. Bank has indicated that it is willing to consent to the Debtor's use of the Collateral, including the Cash Collateral, solely upon the protections, terms and conditions provided for in this Order, including the protections afforded a party acting in "good faith" pursuant to Sections 363(m) of the Bankruptcy Code.

I. Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (B), (G), (K), (M) and (O). This Order is subject to, and U.S. Bank is entitled to the benefits of, the provisions of Sections 361 and 363(m) of the Bankruptcy Code. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

J. The Court hereby finds that this Order has been negotiated in good faith and at arm's length. The Court further finds that the Committee, by and through its counsel, has had sufficient opportunity to review and consider this Order.

K. Good, adequate and sufficient cause has been shown to justify entry of this Order.

NOW, THEREFORE, UPON THE RECORD BEFORE THIS COURT WITH RESPECT TO THE MOTION IT IS HEREBY ORDERED THAT:

1. The Court hereby authorizes the Debtor's use of the Collateral (including, without limitation, Cash Collateral) during the period (the "Budget Period") beginning with the Petition Date and ending on the Termination Date (as defined in Paragraph 13 hereof) for the disbursements set forth in the budget, which is attached as <u>Exhibit A</u> hereto, as such budget may be modified from time to time by the Debtor with the prior written consent of U.S. Bank (the "Budget"), and for no other purposes. The Debtor is and shall be authorized to use Cash Collateral exclusively for disbursements to the extent and in the amounts set forth in the Budget.

The Debtor may use Cash Collateral in an amount equal to up to 10% more than a particular corresponding "category" in the Budget (e.g., "rent", "phone", "utilities"), measured on a cumulative, monthly basis, provided that Cash Collateral is available. In the event that U.S. Bank, in its sole discretion, consents in writing to the use of Cash Collateral in a manner or amount which does not conform to the Budget (such use of Cash Collateral, a "Non-Conforming Use"), the Debtor shall be authorized pursuant to this Order to expend Cash Collateral for such Non-Conforming Use without further Court approval, and U.S. Bank is entitled to all of the protections specified in this Order for any such Non-Conforming Use. Notwithstanding anything in the Budget to the contrary, Cash Collateral may only be used to pay expenses incurred by and for the benefit of the Debtor Sun Container, Inc. and no portion of Cash Collateral may be used to pay expenses in incurred by or for the benefit of related debtors B&N Container, Inc. or Sun Boxes, Inc.

2. The Debtor shall maintain one or more segregated bank accounts, including accounts maintained by the Debtor prior to the Petition Date (collectively, the "Cash Collateral Accounts") into which all proceeds of the sale, collection or disposition of the Collateral and any property of the Debtor that would have constituted the Collateral but for the operation of Section 552(a) of the Bankruptcy Code, including accounts receivable now existing or hereinafter arising, shall be immediately deposited. The Debtor agrees that it will not (without U.S. Bank's prior written consent) close any of the Cash Collateral Accounts or establish any new bank accounts (except as provided herein). In addition, the Debtor further agrees to identify to U.S. Bank, within five (5) business days following the entry of this Order, the names, addresses and numbers of all other existing bank accounts, which accounts the Debtor shall not close without U.S. Bank's prior written consent. The Debtor shall provide to U.S. Bank a written report of the cash balances in all of its bank accounts as of the close of business on

every other Friday during the Budget Period (beginning on July 17, 2009) within five (5) business days thereafter. Subject to the terms and conditions of this Order, the Debtor shall be permitted to withdraw funds from the Cash Collateral Accounts to make disbursements provided for in the Budget or provided for or permitted by this Order with respect to a Non-Conforming Use.

3. Notwithstanding anything herein to the contrary, the Debtor may use Cash Collateral (even if amounts are available in the Cash Collateral Accounts) only if the Borrowing Base (as hereafter defined) exceeds the amount owed to U.S. Bank under the Revolving Line of Credit Loan. The Borrowing Base, at any given time, shall be an amount equal to the sum of (i) 100% of cash on-hand, *plus* (ii) 80% of the face amount of Eligible Accounts (as such term is defined in the Revolving Line of Credit Loan Documents), *plus* (iii) 60% of the cost of Eligible Inventory (as such term is defined in the Revolving Line of Credit Loan Documents). For purposes of calculating the Borrowing Base, (a) all eligible accounts receivable and inventory shall be considered, whether pre-petition or post-petition.

4. In addition to U.S. Bank's security interests, liens, rights and other interests in and with respect to the Collateral, as adequate protection for and to secure the payment of an amount equal to the Collateral Diminution (as defined below) in the value of the Collateral and to induce U.S. Bank to permit the Debtor to use the Collateral (including, without limitation, Cash Collateral as provided in this Order), the Debtor hereby grants to U.S. Bank:

> (i) a security interest in and lien upon the Collateral and all other of the now owned and hereafter-acquired real and personal property, assets and rights of the Debtor, of any kind or nature, wherever located, and the proceeds, products, rents and profits thereof (collectively, the "Post-Petition Collateral"), provided, however, that neither the proceeds from the Chapter 5 causes of action nor the Chapter 5 causes of action themselves constitute Post-Petition Collateral, senior to any other security interests, liens or encumbrances, subject only to, in the following order of priority (a) valid, perfected and enforceable pre-petition liens which are senior to U.S. Bank's liens or security interests as of the Petition Date, (b) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. §

1930 ("United States Trustee's Fees"), (c) any unpaid professional fees and disbursements incurred prior to the Termination Date (as hereinafter defined) by the Debtors or by an official committee of unsecured creditors appointed in the Case (the "Committee") in an aggregate amount not to exceed $75,000.00 (the "Professional Carve-Out"), and (d) U.S. Bank's security interests and liens existing as of the Petition Date upon the Collateral; and

(ii) an administrative claim with priority over all other administrative claims in the Cases, including all claims of the kind specified under Sections **503(b) of the Bankruptcy Code (subject only to the items referred to in Paragraph** 4(i)(b) and 4(i)(c) above, subject to Sections 726 and 507 of the Code, in the event the case is converted to a proceeding under Chapter 7 under the Code);

5. So long as a Termination Event or an event which with the giving of notice or lapse of time or both would constitute a Termination Event shall not have occurred, the Debtor shall be permitted to use Cash Collateral to pay the fees and expenses of legal, accounting and appraisal professionals retained by the Debtor and the Committee. Notwithstanding the foregoing, prior to the payment of the professionals of the Debtor, payment of their fees and expenses must be authorized by the Court consistent with Sections 330 and 331 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, no portion of the Professional Carve-Out or any Cash Collateral or Post-Petition Collateral of U.S. Bank (including any monies paid or payable to professionals for the Committee) shall be used for professional fees incurred for (a) any litigation or threatened litigation against U.S. Bank, or (b) for the purpose of challenging the amount, validity, extent or priority of any claim, lien or security interest held or asserted by U.S. Bank, or (c) asserting any defense, claim, counterclaim or offset with respect to the Pre-Petition Indebtedness or the security interests or liens held or asserted by U.S. Bank in the Collateral; provided, however, that the Professional Carve-Out may be utilized by such persons (except the Debtor) and their professionals for the purpose of investigating any of the foregoing.

6. For purposes of this Order, the term "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value after the Petition Date of the Collateral as of the Petition Date for any reason including, without limitation, depreciation, sale, loss or use of Cash Collateral, whether in accordance with the terms and conditions of this Order or otherwise.

7. As further adequate protection for the use of the Collateral (including, without limitation, Cash Collateral), the Debtor shall continue to pay to U.S. Bank on a monthly basis interest on the Debtor's obligations under the Loan Documents, with such interest payments being due on the first (1st) day of each month. Notwithstanding anything herein to the contrary, all such interest payments to U.S. Bank shall be without prejudice to the rights of any party in interest to subsequently seek a determination from the Court as to whether U.S. Bank is undersecured as of the Petition Date; if the Court determines that U.S. Bank was undersecured as of the Petition Date, all payments of interest to the Bank hereunder shall be subject to partial or total reapplication to adequate protection payments and/or principal, as the Court may determine.

8. As further adequate protection for the use of the Collateral (including, without limitation, Cash Collateral), the Debtor shall maintain at all times a policy of casualty insurance in effect on all of U.S. Bank's collateral for an amount at least equal to the Pre-Petition Indebtedness, naming U.S. Bank as an additional loss payee.

9. All security interests and liens granted pursuant to this Order in favor of U.S. Bank shall be valid, perfected, enforceable and effective as of the Petition Date without any further action by the Debtor or U.S. Bank and without the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications or notices, mortgages or other documents. This Order (or a copy) shall be sufficient and conclusive evidence of the

validity, priority, enforceability and effectiveness of the liens granted hereunder. Notwithstanding the foregoing, the Debtor is authorized and directed to execute and deliver to U.S. Bank such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to pay such costs and expenses as U.S. Bank shall reasonably require to be signed by the Debtor to evidence, create, perfect or file any and all other security interests, pledges, mortgages, liens or encumbrances retained or granted by the Debtor to U.S. Bank hereunder, including in the Post-Petition Collateral.

10. Subject to Paragraph 4(i) and 4(ii), the security interests and liens retained by and granted to U.S. Bank, hereunder shall not be subordinated to or made *pari passu* with any other lien or security interest under Section 364(d) of the Bankruptcy Code or otherwise.

11. The Debtor shall continue to provide U.S. Bank with all financial information as required in the Loan Documents. Borrowing base certificates shall be provided by the Debtor on a bi-weekly basis and shall be delivered to U.S. Bank by no later than Tuesday of the week following the end of each two-week period. In addition, the Debtor agrees to furnish to U.S. Bank (a) its December 31, 2008 fiscal year-end financial statements in form and substance as has been acceptable to U.S. Bank, and its most recent interim company-prepared financial statements by no later than from the date hereof, (b) bi-weekly reports of cash receipts and disbursements, including a reconciliation, showing any variances to the Budget and any Non-Conforming Use (the "Budget Reconciliation"), and (c) monthly accounts receivable aging reports (the "Accounts Receivable Aging"). The Budget Reconciliation shall be provided to U.S. Bank so as actually to be received by U.S. Bank within five (5) business days following the end of each prior two-week period. The Accounts Receivable Aging shall be provided to U.S. Bank so as actually to be received by U.S. Bank within five (5) business days following the end of each month. In addition, the Debtor shall provide to U.S. Bank with such other

reports and information as U.S. Bank may reasonably request. U.S. Bank shall have the right, upon 24 hours' prior notice, during ordinary business hours, to inspect and copy the Debtor's books and records.

13. Subject to Paragraph 23 of this Order, the Debtor has acknowledged and agreed, and this Court hereby finds for all purposes in these Cases, that as of the Petition Date: (i) the Pre-Petition Indebtedness constitutes a valid and binding obligation of the Debtor without offset, recoupment, counterclaim, deduction, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind; and (ii) U.S. Bank's security interests in and liens upon the Collateral, including the Cash Collateral, are valid, perfected, enforceable and non-avoidable. As additional adequate protection, the Debtor hereby waives and releases any and all Claims (as such term is defined in the Bankruptcy Code) against U.S. Bank, whether arising at law or at equity, including any re-characterization, subordination, avoidance or other debtor action or claim arising under or pursuant to Sections 510 or 542 through 553, inclusive, of the Bankruptcy Code; provided, however, that nothing herein shall waive or release any claims arising under or pursuant to Section 506 of the Bankruptcy Code.

13. The Debtor's use of Collateral (including without limitation Cash Collateral) shall expire (subject to any applicable notice requirements as set forth *infra*), on the earliest to occur of (each such occurrence being hereinafter referred to as a "Termination Event"): (a) November 30, 2009 (the "Expiration Date"); (b) the Debtor's failure to file a motion to authorize the scheduling and approval of the sale of substantially all of the Debtor's assets by September 30, 2009; (c) the Debtor's failure to conduct a sale under Section 363 of substantially all of the Debtor's assets by October 31, 2009; (d) the dismissal of any of the Case or the conversion of any of the Case to case under Chapter 7 of the Bankruptcy Code; (e) the entry by the Court of an order granting relief from the automatic stay imposed by Section 362 of the

Bankruptcy Code to any entities other than U.S. Bank with respect to acts against the Collateral (or collateral which other than by operation of Section 552(a) of the Bankruptcy Code would have constituted the Collateral) without U.S. Bank's consent; (f) the entry by the Court of an order or orders granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code to any entities other than U.S. Bank with respect to acts against the Post-Petition Collateral without U.S. Bank's consent; (g) the appointment of a trustee or examiner or any representative with expanded powers for the Debtor; (h) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtor; (i) the failure by the Debtor to deliver to U.S. Bank any of the documents or other information reasonably required to be delivered pursuant to Paragraph 11 hereof when due or any such documents or other information shall contain a material misrepresentation; (j) the failure of the Debtor to adhere to the Budget (either with respect to receipt or disbursements) in any material respect except with respect to a "Non Conforming Use" provided such Non Conforming Use is undertaken in accordance with the terms of this Order; (k) if, at any time, the amount of the Revolving Line of Credit Loan owed to U.S. Bank exceeds the amount of the Borrowing Base as defined in Paragraph 3 hereof; (l) the occurrence of a material adverse change in the business of the Debtor; and (m) the failure by the Debtor to observe or perform any of the material terms or material provisions contained herein. On or after the occurrence of a Termination Event, the Debtor shall cease using Cash Collateral on the third business day after the date on which the Debtor receives notice of such Termination Event if such Termination Event has not been cured (the date of such cessation being referred to as a "Termination Date. U.S. Bank and the Committee may, in their sole discretion and without further order of Court, grant extensions of any of the deadlines contained in this Paragraph.

14. This Order and the transactions contemplated hereby shall be without prejudice to (i) the right of U.S. Bank to seek, on notice and hearing, additional adequate protection, to move to vacate the automatic stay, to move for the appointment of a trustee or examiner, to move to dismiss or convert the Cases, or to take any other action in the Cases and to appear and be heard on any matter raised in these Cases; and (ii) any and all rights, remedies, claims and causes of action which U.S. Bank may have against any other party liable for the Pre-Petition Indebtedness. In addition, except as otherwise provided in Paragraph 22 of this Order, entry of this Order and the implementation of the transactions contemplated hereby are without prejudice to the rights of the Debtor to take such actions, on notice and hearing, as may be appropriate to allow further use of Cash Collateral without the consent of U.S. Bank.

15. The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be necessary to implement the terms and conditions of this Order and the transactions contemplated hereby. The stay of Section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated hereby.

16. Nothing contained herein shall be construed to obligate U.S. Bank to make any loans or advances to the Debtor or to consent to, or permit the use of, the Cash Collateral except as provided herein.

17. Pursuant to Sections 361 and 363 of the Bankruptcy Code, U.S. Bank is hereby found to be an entity that has acted in "good faith" in connection with the negotiation and entry of this Order and the consummation of the transaction contemplated hereby, and is entitled to all of the protection provided to such an entity under Section 363(m) of the Bankruptcy Code.

18. This Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Case to a Chapter 7 case, or dismissing the Case, or any

order which may be entered confirming or consummating any plan(s) of reorganization, and the terms and provisions of this Order, as well as the priorities in payment, liens and security interests retained or granted pursuant to this Order shall continue in this or any superseding case under the Bankruptcy Code, subject to Section 726 of the Code, until the amount of the Pre-Petition Indebtedness is indefeasibly paid in full by the Debtor.

19. Nothing contained in this Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantors to U.S. Bank, with respect to monies owed by the Debtor to U.S. Bank.

20. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other Court, without U.S. Bank's consent, such stay, modification or vacation shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to U.S. Bank that is or was incurred pursuant to this Order before U.S. Bank's receipt of notice of the effective date of such stay, modification or vacation, (b) the validity and enforceability of the liens and security interests authorized, retained, granted or created by this Order, or (c) U.S. Bank's right and ability to collect all amounts due to them from the Debtor as secured or administrative claims.

21. Notwithstanding any such stay, modification or vacation, any indebtedness, obligation or liability incurred by the Debtor pursuant to this Order arising prior to U.S. Bank's receipt of notice of the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and U.S. Bank shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens retained or granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed

or lien or security interests granted or retained pursuant to this Order is and shall remain subject to all of the protections afforded under Section 363(m) of the Bankruptcy Code.

22. Debtor may seek approval from the Court to obtain, and U.S. Bank reserves its right to object thereto for any reason (1) use of Cash Collateral pursuant to Section 363 of the Bankruptcy Code; or (2) debtor-in-possession financing pursuant to Section 364 of the Bankruptcy Code.

23. The findings contained in Paragraph 12 of this Order shall be binding upon the Debtor and shall be binding upon all other parties in interest, including any Committee or Trustee, unless (i) a party in interest (other than the Debtor) has properly filed an adversary proceeding or contested matter by the earlier of (a) the date that is sixty (60) days after the appointment of any Committee, or (b) the date that is sixty (60) days after the appointment of any Trustee, challenging the validity, enforceability, priority or extent of the Pre-Petition Indebtedness or U.S. Bank's liens on the Collateral, or otherwise asserting any claims or causes of action against U.S. Bank on behalf of the Debtor's estate, and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is timely and properly filed as of such date or the Court does not rule in favor of the plaintiff in any such proceeding, (a) the obligations of the Debtor under the Loan Documents shall constitute allowed claims for all purposes in the Cases, and any subsequent Chapter 7 case(s), (b) U.S. Bank's security interests and liens on the Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, not subject to recharacterization, subordination or otherwise avoidable and (c) the Pre-Petition Indebtedness, U.S. Bank's security interest and liens on the Collateral and U.S. Bank shall not be subject to any other or further challenge by any party in interest with respect to the subject matter of this paragraph seeking to exercise the rights of the Debtor's estate, including, without

limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of such date, the findings contained in this Order, including, without limitation, the findings contained in Paragraph 12 of this Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such findings were expressly challenged in such adversary proceeding or contested matter.

This Order constitutes a Final Order agreed to by U.S. Bank and the Debtor, pursuant to Rule 4001(d) of the Federal Rules of Bankruptcy Procedure. The Final Order shall be served via ECF to those parties who filed a notice of appearance in these proceedings, the Committee, those who have responded to the Motion, and parties who have otherwise participated in this case.

Dated: August 26, 2009

United States Bankruptcy Judge

4989236_1

*Law Firm*
Rolling Cash Flow (r.)

**SUN CONTAINER**
**Rolling Cash Flow**

Section 3: Future Weeks
Current Week

*[Upper cash flow table is heavily obscured/darkened and not legibly readable. Right-most "Total Current & Future Weeks" column values:]*

| Line Item | Total Current & Future Weeks |
|---|---|
| Beginning Cash Balance | 127,256 |
| Accounts Receivable Collections | 1,460,811 |
| Total In | 1,460,811 |
| Total Available | 1,588,067 |
| Material | 860,000 |
| Payroll Wkly (incl. taxes) | 305,457 |
| Broker Sales Commission Fees | 2,400 |
| Credit card (misc expense) | 15,000 |
| Delivery | 13,000 |
| Work Comp | 18,000 |
| Insurance Group Hlth | 30,423 |
| Fork Lift Rent | — |
| Equipment Lease | 2,378 |
| Office Phones | 5,400 |
| Interest Expense | 8,625 |
| First National | 16,626 |
| Truck Lease | 10,440 |
| Diesel | 18,000 |
| Utilities | 40,000 |
| Professional Fees | 130,000 |
| Propane | 2,400 |
| Outside Services | 12,800 |
| Maintenance and Repair | 7,624 |
| Office Supplies | 9,000 |
| Sales Auto Expense | 6,500 |
| Cutting and Printing Dies | 13,500 |
| Factory Supplies | 7,500 |
| Uniforms | 700 |
| Other | |
| Total Out | 1,533,625 |
| Ending Cash Balance | 52,442 |

| | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales For the Week | | 98,437 | 98,437 | 98,437 | 137,625 | 137,625 | 137,625 | 137,625 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 1,625,811 |
| Material 58% | | 57,093 | 57,093 | 57,093 | 79,823 | 79,823 | 79,823 | 79,823 | 75,400 | 75,400 | 75,400 | 75,400 | 75,400 | 75,400 | 942,970 |
| Accounts Receivable | | 629,148 | 674,585 | 693,022 | 732,210 | 771,398 | 810,586 | 810,586 | 802,961 | 795,336 | 787,711 | 787,711 | 787,711 | 787,711 | |
| Inventory | | 291,882 | 259,788 | 247,695 | 232,872 | 233,050 | 228,227 | 223,405 | 228,005 | 232,605 | 232,205 | 231,805 | 236,405 | 241,005 | |
| Total A/R and Inv | | 921,030 | 934,373 | 940,717 | 965,082 | 1,004,448 | 1,038,813 | 1,033,991 | 1,030,966 | 1,027,941 | 1,019,916 | 1,019,516 | 1,024,116 | 1,028,716 | |
| Cash, A/R, Inv | | 1,061,224 | 1,061,495 | 1,033,042 | 1,041,757 | 1,043,512 | 1,047,427 | 1,047,562 | 1,053,074 | 1,065,537 | 1,066,250 | 1,063,182 | 1,068,695 | 1,081,158 | |
| A/R @ 80% | | 503,319 | 539,668 | 554,418 | 585,768 | 617,119 | 648,469 | 648,469 | 642,369 | 636,269 | 630,169 | 630,169 | 630,169 | 630,169 | |
| INV @ 60% | | 175,129 | 155,873 | 148,517 | 139,723 | 139,830 | 136,936 | 134,043 | 136,803 | 139,563 | 139,323 | 139,083 | 141,843 | 144,603 | |
| Cash @ 100% | | 140,194 | 127,122 | 92,325 | 76,675 | 39,064 | 8,613 | 13,571 | 22,109 | 37,596 | 46,334 | 43,666 | 44,579 | 52,442 | |
| Borrowing Base | | 818,642 | 822,663 | 795,360 | 802,167 | 796,012 | 794,019 | 796,083 | 801,280 | 813,428 | 815,826 | 812,918 | 816,591 | 827,213 | |
| Line Balance | | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | 746,193 | |
| Available / (overadvance) | | 72,449 | 76,470 | 49,167 | 55,973 | 49,819 | 47,826 | 49,890 | 55,087 | 67,235 | 69,632 | 66,725 | 70,398 | 81,020 | |