# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Joint Case No. 09-24949 |
| | ) | |
| SUN CONTAINER, INC., *et al.*,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Honorable Susan Pierson Sonderby |
| | ) | |
| | ) | Hearing:  May 18, 2010 at 10:30 a.m. |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on May 18, 2010 at 10:30 a.m., the undersigned shall appear before the Honorable Susan Pierson Sonderby, United States Bankruptcy Judge, in the courtroom usually occupied by her, United States Courthouse, 219 South Dearborn Street, courtroom 642, Chicago, Illinois, and then and there present the **Final Fee Application of K&L Gates LLP as Counsel to the Debtors and Request to Limit and Shorten Notice**, a copy of which is attached hereto and herewith served upon you.

Dated:  May 10, 2010

Respectfully submitted,

**SUN CONTAINER, INC.,** *et al.*

  /s/  Jeffrey M. Heller
    One of their Attorneys

Harley J. Goldstein (No. 6256010)
Sven T. Nylen (No. 6278148)
Jeffrey M. Heller (No. 6294314)
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

---

[1]  The Debtors are the following entities:  (i) Sun Container, Inc.; (ii) Sun Boxes, Inc.; and (iii) B&N Container, Inc.

E-481270 v1

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey M. Heller, an attorney, do hereby certify that on May 10, 2010, I caused true and correct copies of the **Notice of Motion** and the **Final Fee Application of K&L Gates LLP as Counsel to the Debtors and Request to Limit and Shorten Notice** to be served electronically to the parties listed on the attached service list via CM/ECF, the Court's Electronic Filing System.

Dated:  May 10, 2010

Respectfully submitted,

**SUN CONTAINER, INC.,** *et al.*

 /s/  Jeffrey M. Heller
  One of their Attorneys

Harley J. Goldstein (No. 6256010)
Sven T. Nylen (No. 6278148)
Jeffrey M. Heller (No. 6294314)
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

**Parties Served Via CM/ECF**

Steven A Ginther on behalf of Creditor Missouri Department of Revenue
ndilecf@dor.mo.gov

William T Neary
USTPRegion11.ES.ECF@usdoj.gov

Lawrence A Steingold on behalf of Creditor Metropolitan National Bank
lawrence.steingold@huschblackwell.com

Michael Traison on behalf of Creditor Committee Official Committee of Unsecured
Creditors
traison@millercanfield.com  wysocki@millercanfield.com
swansonm@millercanfield.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Joint Case No. 09-24949 |
| | ) | |
| SUN CONTAINER, INC., *et al.*,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Honorable Susan Pierson Sonderby |
| | ) | |
| | ) | Hearing:  May 18, 2010 at 10:30 a.m. |

**FINAL FEE APPLICATION OF K&L GATES LLP AS COUNSEL**
**TO THE DEBTORS AND REQUEST TO LIMIT AND SHORTEN NOTICE**

K&L Gates LLP ("*K&L Gates*"), counsel to the above-captioned debtors in possession (the "*Debtors*") appointed in the above-captioned bankruptcy cases, hereby submits its *Final Fee Application of K&L Gates LLP as Counsel to the Debtors and Request to Limit and Shorten Notice* (the "*Application*"), relating to services rendered and expenses incurred from July 9, 2009 through April 30, 2010 (the "*Application Period*"), and in support thereof, respectfully states as follows:

**<u>INTRODUCTION</u>**

As discussed in greater detail herein, the Debtors filed a plan of reorganization with this Court in December 2009, confirmed such plan in January 2010, and effectuated such plan in April 2010.  The plan, which provides creditors of all three bankruptcy estates with a greater distribution than they would have received in a liquidation scenario, was supported by all major constituencies in this case, including the Official Committee of Unsecured Creditors, U.S. Bank National Association (Debtor Sun Container's senior secured lender), and First National Bank of Okawville (Debtor Sun Container's junior secured lender).  K&L Gates's efforts throughout these cases have been efficient and cost-sensitive, with its attorneys and paralegals combining for

---

[1]     The Debtors are:  (i) Sun Container, Inc.; (ii) Sun Boxes, Inc.; and (iii) B&N Container, Inc.

an overall blended hourly rate of approximately **$283.45**.  Not only did K&L Gates bill efficiently in these cases, but as set forth in K&L Gates's interim fee applications and this Application, K&L Gates attorneys did not bill the Debtors for significant time spent attending to key matters.  Accordingly, K&L Gates believes that the fees and expenses requested herein are reasonable and should be approved in their entirety.

## BACKGROUND

On July 9, 2009 (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 (the "*Chapter 11 Cases*") of title 11 of the United States Code (the "*Bankruptcy Code*").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors operated their businesses and managed their properties as debtors in possession.  On July 13, 2009, the Court entered an order jointly administering these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

On November 5, 2009, K&L Gates filed its *First Interim Fee Application of K&L Gates LLP as Counsel to the Debtors and Request to Apply Retainer* (the "*First Interim Application*") requesting that this Court enter an order allowing K&L Gates $99,811.00 in reasonable and necessary fees and $8,222.13 in actual expenses for the period of July 9, 2009 through September 30, 2009 (Docket No. 113).  This Court entered an order approving the First Interim Application on December 8, 2009 (Docket No. 140), allowing K& Gates $99,181.00 in reasonable and necessary fees ($630 in fees were disallowed) and $3,316.18 in actual expenses.[2]

On March 4, 2010, K&L Gates filed its *Second Interim Fee Application of K&L Gates LLP as Counsel to the Debtors* (the "*Second Interim Application*") requesting that this Court

---

[2]     Per the Court's December 8, 2009 order, K&L Gates may seek allowance of the $4,465.70 in expenses for the months of August and September 2009 and the $440.25 in facsimile charges requested in its First Interim Application in connection with a final fee application providing the information requested by the Court at the hearing on the First Interim Application.  K&L Gates is only seeking approval of the $4,465.70 in this Application.

enter an order allowing K&L Gates $74,599.50 in reasonable and necessary fees and $4,581.29 in actual expenses for the period of February 1, 2010 through April 30, 2010 (Docket No. 199). The hearing on the Second Interim Application was continued until May 18, 2010, and is scheduled for hearing contemporaneously with this Application.

On December 11, 2009, the Debtors' filed their *Second Amended Plan of Reorganization* (the "*Plan*"). On January 6, 2010, this Court entered an order (the "*Confirmation Order*") confirming the Debtors' Plan. The Plan went effective on April 30, 2010 (the "*Effective Date*").

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are sections 330, 331, 503(b), and 507(a) of the Bankruptcy Code, and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

## DISCUSSION OF APPLICABLE STANDARD

Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

[T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . .  In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a).

The Seventh Circuit Court of Appeals has stated that:

3

The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each [professional], the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and the results obtained, and a complex of other considerations under the heading of "billing judgment."

*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986).  Additionally, other courts of appeal have recognized that:

[I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation.  It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner.  On the other hand, it is also possible that [the client] would not have enjoyed the success it did had its counsel managed matters differently.

*Boston and Main Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

In reviewing the Application, the Court should be guided by the Seventh Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

*In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992); *see Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984) (section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . .  Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts.").

In *Continental Securities*, the Seventh Circuit found error in the lower court's practice of: (a) placing ceilings on the hourly rates of all lawyers; (b) refusing to allow paralegal services to be compensated at market rate; (c) refusing to award a risk multiplier; (d) making large across-

the-board cuts in research time; (e) making large across-the-board cuts in conference time; and (f) refusing to allow attorneys to bill computerized legal research services (*e.g.*, Westlaw). *Continental Illinois Securities Litigation*, 962 F.2d at 568-70.

In evaluating the Application, this Court should consider the novelty and difficulty of the issues presented, the skill required to perform the legal services properly, the preclusion of other employment caused by K&L Gates's retention in this case, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. *See In re Alberto*, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).

## SERVICES PERFORMED

K&L Gates's hourly rates of compensation for attorneys and paraprofessionals during 2009 ranged from $55 to $900 (however, no professional with a 2009 hourly rate in excess of $550 has performed services herein). For the 2010 calendar year, hourly rates of compensation for attorneys and paraprofessionals range from $65 to $990 (however, no professional with a 2010 hourly rate in excess of $580 has performed services herein). K&L Gates consistently and consciously made every reasonable effort to represent the Debtors in the most economical, efficient, and practical manner possible.

As discussed above, K&L Gates has already filed two interim fee applications detailing the services rendered and actual and necessary expenses incurred from the Petition Date through January 31, 2010. For February 1, 2010 through April 30, 2010 period, K&L Gates seeks approval and allowance of compensation in the amount of $32,084.50 and reimbursement of expenses in the amount of $311.27, for a total of $32,395.77. As set forth in footnote 2 above and in the section below titled "Expenses from First Interim Application," K&L Gates is also

seeking allowance and payment of expenses requested in the First Interim Application in the amount of $4,465.70.

Monthly statements detailing the services rendered and actual and necessary expenses incurred by K&L Gates during February, March, and April 2010 are attached hereto and incorporated herein as follows:

- Exhibit A:  February-March 2010 Statement of Services Rendered and Expenses Incurred; and

- Exhibit B:  April 2010 Statement of Services Rendered and Expenses Incurred.

In accordance with Bankruptcy Rule 2016, the Application filed and served by K&L Gates has attached as exhibits:  (i) documents containing detailed chronological narratives of the time spent, the dates and descriptions of the services rendered, and the identity of the K&L Gates attorneys and paraprofessionals who provided services on behalf of the Debtors during the applicable Application period, divided among uniform categories adopted by K&L Gates for the administration of these bankruptcy cases; and (ii) a summary and detailed listing of each disbursement incurred during the applicable Application period.

In preparing this Application, K&L Gates calculated the amount of time spent by each attorney and paralegal performing actual and necessary legal services on behalf of the Debtors. The data came directly from computer records that are kept for each of K&L Gates's clients and are generated by time entries recorded by each K&L Gates billable timekeeper.  These entries are reported to the firm's computer which produced the time records for the Application.

No agreement or understanding exists between K&L Gates and any other person for the sharing of compensation received or to be received in connection with these bankruptcy cases, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

6

K&L Gates reserves the right to correct, amend, or supplement this Application.

A summary of compensation requested herein regarding each of the K&L Gates professionals and paraprofessionals is set forth below:

**Services Rendered in 2009 During the Application Period**

| Timekeeper | Title | Year of Illinois Bar Admission | Hourly Rate | Total Hours | Total Compensation Requested |
|---|---|---|---|---|---|
| Thomas F. Joyce | Partner | 1981 | $595.00 | 3.9 | $2,320.50 |
| Harley J. Goldstein | Partner | 1998 | $550.00 | 11.8 | $6,490.00 |
| Joseph C. Wylie | Partner | 1999 | $405.00 | 1.6 | $648.00 |
| Douglas J. Hatlestad | Partner | 2000 | $375.00 | 1.2 | $450.00 |
| Sven T. Nylen | Partner | 2002 | $350.00 | 125.8 | $44,030.00 |
| Matthew E. McClintock | Associate | 2003 | $350.00 | 4.3 | $1,505.00 |
| Sarah H. Bryan | Associate | 2007 | $270.00 | 47.9 | $12,933.00 |
| Jeffrey M. Heller | Associate | 2007 | $270.00 | 253.2 | $68,364.00 |
| Patrina Jones | Paraprofessional | N/A | $215.00 | 1.6 | $344.00 |
| Laura Newcomer | Summer Associate | N/A | $200.00 | 1.9 | $380.00 |
| Teresa Gomez | Paraprofessional | N/A | $180.00 | 99.8 | $17,964.00 |
| **TOTAL** | | | | **553.0** | **$155,428.50[3]** |
| **Blended Rate for All Timekeepers:** | | | | | **$281.06** |

**Services Rendered in January 2010 During the Application Period**

| Timekeeper | Title | Year of Illinois Bar Admission | Hourly Rate | Total Hours | Total Compensation Requested |
|---|---|---|---|---|---|
| Douglas J. Hatlestad | Partner | 2000 | $395.00 | 0.1 | $39.50 |
| Sven T. Nylen | Partner | 2002 | $370.00 | 7.5 | $2,775.00 |
| Sarah H. Bryan | Associate | 2007 | $285.00 | 0.9 | $256.50 |
| Jeffrey M. Heller | Associate | 2007 | $285.00 | 34.0 | $9,690.00 |
| Bryan K. Maguire | Associate | 2007 | $285.00 | 17.1 | $4,873.50 |
| Teresa Gomez | Paraprofessional | N/A | $190.00 | 6.8 | $1,292.00 |
| Danita L. Swider | Paraprofessional | N/A | $185.00 | 0.3 | $55.50 |
| **TOTAL** | | | | **66.7** | **$18,982.00** |
| **Blended Rate for All Timekeepers:** | | | | | **$284.59** |

---

[3]     This Court disallowed $630 in fees with respect to certain time entries discussed at the hearing on the First Interim Application.  The $154,798.50 amount already reflects this $630 reduction.  The Total Hours and Blended Rate, however, reflect the full amount of hours and fees requested, and do not account for such disallowance.

**Services Rendered from February 1, 2010 – April 30, 2010 During the Application Period**

| Timekeeper | Title | Year of Illinois Bar Admission | Hourly Rate | Total Hours | Total Compensation Requested |
|---|---|---|---|---|---|
| Harley J. Goldstein | Partner | 1998 | $580.00 | 6.0 | $3,480.00 |
| Sven T. Nylen | Partner | 2002 | $370.00 | 4.3 | $1,591.00 |
| Jeffrey M. Heller | Associate | 2007 | $285.00 | 65.7 | $18,724.50 |
| Bryan K. Maguire | Associate | 2007 | $285.00 | 20.5 | $5,842.50 |
| Patrina O. Jones | Paraprofessional | N/A | $230.00 | 2.8 | $644.00 |
| Teresa Gomez | Paraprofessional | N/A | $190.00 | 9.0 | $1,710.00 |
| Danita L. Swider | Paraprofessional | N/A | $185.00 | 0.5 | $92.50 |
| **TOTAL** | | | | **108.8** | **$32,084.50** |
| **Blended Rate for All Timekeepers:** | | | | | **$294.89** |

During the Application Period, K&L Gates devoted **728.5** hours to representing the Debtors with respect to categories "A" through "L" below and, in so doing, has provided the Debtors with actual and necessary legal services worth a total of **$205,865.00** (which amount reflects the $630 reduction in fees requested, although such amount has not been removed from the specific categories addressed in categories "A" through "L" below), and has incurred actual and necessary expenses totaling **$12,674.44** (which amount reflects K&L Gates's withdrawal of its request for approval of $440.25 in facsimile charges from the First Interim Application). Below, this Application sets forth in detail, and broken down by activity, the work performed by K&L Gates and the time spent during the Application Period:

**A.     Case Administration                                $18,770.50**

K&L Gates spent **72.8** hours at a cost of **$18,770.50** on general case administration matters.  This category primarily includes time spent performing necessary case administration tasks (including maintaining and updating dockets, calendars, and correspondence files, and retrieving necessary documents), reviewing incoming pleadings, correspondence, and notices, and corresponding with parties in interest concerning general case matters.  This category may

also include matters which encompass more than one other discrete category, including the consideration of issues related to joint administration, preparation for the initial debtor meeting, and preparation for the disclosure statement hearing.

**B.      Schedules, Statements, and Reports                $13,956.50**

K&L Gates spent **61.0** hours at a cost of **$13,956.50** working on the Debtors' schedules, statements of financial affairs, and monthly operating reports. The majority of this time was spent gathering and analyzing financial and operating information contained in the Debtors' books and records, and preparing the schedules and statements.

**C.      K&L Gates Retention and Fee Applications          $13,173.50**

K&L Gates spent **49.2** hours at a cost of **$13,173.50** on K&L Gates retention and fee application issues. This category primarily includes time spent working on K&L Gates's retention application, reviewing and preparing the exhibits to the interim fee applications and this Application to ensure compliance with the necessary detail requirements and protection of privilege, drafting K&L Gates's fee applications, and preparing for and attending the hearings thereon.

**D.      Other Professionals Retention and Fee Applications     $6,953.50**

K&L Gates spent **24.6** hours at a cost of **$6,953.50** on other professionals' retention and fee application issues. This category includes time spent: (i) working on the retention application of the Debtors' financial advisor, Legacy Advisors; (ii) addressing issues related to the Official Committee of Unsecured Creditors' retention of legal counsel and proposed retention of a financial advisor; and (iii) addressing issues related to the requested fees of the Official Committee of Unsecured Creditors.

**E.      Cash Collateral, Financing, and Secured Creditors      $30,371.50**

K&L Gates spent **103.4** hours at a cost of **$30,371.50** on cash collateral and secured lender issues.  This matter primarily includes time spent negotiating the terms of cash collateral use with the Debtors' secured lenders, drafting cash collateral motions and proposed orders, preparing for and attending hearings on the motions to use cash collateral, addressing lien perfection issues, analyzing loan documents, ensuring compliance with the terms of the cash collateral orders, reviewing and producing documents to counsel to U.S. Bank and counsel to the Committee as required under the terms of the Sun Container, Inc. cash collateral orders, and negotiating and resolving outstanding loan payment issues with The First National Bank of Okawville.

**F.      Inquiries      $9,506.50**

K&L Gates spent **26.2** hours at a cost of **$9,506.50** responding to the Committee's requests for financial information and documentation (including time spent gathering and analyzing such information), responding to inquiries of creditors, and preparing for and attending the Committee formation meeting.

**G.      Customers, Vendors, and Operations      $8,237.00**

K&L Gates spent **28.3** hours at a cost of **$8,237.00** addressing employee wage and benefit issues, drafting informational letters to vendors and customers, analyzing the Debtors' accounts payable and accounts receivable in connection with operational issues, responding to vendor requests for payment, corresponding with parties in interest regarding the Debtors' ongoing operations, and addressing issues related to a creditor's potential interference with the Debtors' business relations.

10

**H.    Litigation and Avoidance Actions                    $6,813.00**

K&L Gates spent **25.1** hours at a cost of **$6,813.00** on litigation issues.  This category includes time spent on issues related to the adversary proceeding initiated against Brian Corrigan, including (i) researching garnishment and judgment lien issues, (ii) drafting and filing a complaint, (iii) attending status hearings, (iv) negotiating with counsel to Mr. Corrigan, and (v) drafting a stipulation to resolve the adversary proceeding.  This category also includes time spent on issues related to the adversary proceeding initiated against Metropolitan National Bank ("*Metropolitan*"), including (i) researching, drafting, and filing a complaint, (ii) attending status hearings, (iii) negotiating with counsel to Metropolitan, and (iv) drafting a stipulation to resolve the adversary proceeding.

**I.    Plan/Disclosure Statement                    $84,698.00**

K&L Gates spent **285.4** hours at a cost of **$84,698.00** primarily on issues related to the Debtors' Plan, including: (i) analyzing and researching issues related to plan structure; (ii) working on the Debtors' exit strategy, including corresponding with parties in interest regarding plan formulation, working with Legacy Advisors regarding financial projections, capabilities, and liquidation analyses, and conferring with the Debtors' principals regarding plan negotiations; (iii) drafting the Debtors' disclosure statement, Plan, creditor notes, ballots, and additional associated documents; (iv) negotiating with parties in interest regarding the disclosure statement and Plan; (v) preparing for and attending hearings on the motion to approve the adequacy of the disclosure statement; (vi) preparing for and attending the Plan confirmation hearing; (vii) tabulating votes and preparing a ballot report; (viii) researching pertinent tax issues in connection with the treatment of creditors under the Plan; (ix) negotiating and working with the Reorganized Debtor's proposed secured lender to prepare all documents needed to close the transaction

contemplated under the Plan; (x) corresponding with the Debtors' principals and parties in interest regarding effectuating the Plan; and (xi) preparing for and attending the closing of the transactions contemplated under the Plan so that the Plan could be effectuated.

**J.      Asset Sales                                    $5,184.00**

K&L Gates spent **17.6** hours at a cost of **$5,184.00** on matters relating to a potential sale of the Debtors' assets, including legal research regarding sale issues, analyzing stalking horse and other sale requirements, and corresponding with parties in interest.

**K.      Claims                                         $6,770.00**

K&L Gates spent **27.1** hours at a cost of **$6,770.00** conducting legal research regarding certain claims, drafting a motion to set bar dates to file proofs of claim, corresponding with the Debtors regarding proofs of claim that they filed in other bankruptcy cases, addressing issues regarding Pratt Industries' asserted administrative claim, including negotiating a settlement of such claim, preparing a 9019 motion, and attending the hearing thereon, and drafting multiple motions to extend the deadline for professionals to file administrative claims.

**L.      Executory Contracts and Leases                 $2,061.00**

K&L Gates spent **7.8** hours at a cost of **$2,061.00** on matters associated with the Debtors' termination of a property lease with Motorplex, Inc., including researching lease termination and rent acceleration issues, analyzing a complaint filed by Motorplex against the Debtors, drafting a motion to reject the Motorplex lease, preparing for and attending a hearing on such motion, and corresponding with the Debtors regarding the same.

## <u>ADDITIONAL VOLUNTARY REDUCTION OF PROFESSIONAL FEES</u>

Sven Nylen, the K&L Gates partner supervising the day to day administration of this representation, did not bill the Debtors for at least 15 hours spent attending to matters for the

Debtors between February 1, 2010 and April 30, 2010, resulting in a voluntary reduction of approximately $5,550.00.  This amount is in addition to the approximate $12,450 discussed in the First Interim Application and Second Interim Application for which Mr. Nylen did not bill the Debtors.  K&L Gates's combined overall blended hourly rate of $283.45 during the Application Period demonstrates the continued efficiency of K&L Gates services in these Chapter 11 Cases.

### EXPENSES INCURRED

K&L Gates incurred actual out of pocket expenses in the amount of $12,674.44 (which amount reflects K&L Gates's withdrawal of its request for approval of $440.25 in facsimile charges from the First Interim Application), all of which were necessary for the proper representation of the Debtors in these bankruptcy proceedings.  K&L Gates charges its private clients for expenses in the exact manner as requested herein.  The expenses are further detailed by category below:

Photocopying:  K&L Gates incurred in-house copying and printing charges in the amount of $1,742.72, primarily in connection with making photocopies of the Debtors' Plan solicitation package for mailing to all creditors and making photocopies of certain documents necessary to effectuate the Debtors' Plan.  The cost charged for K&L Gates's in-house duplication service was 10 cents per copy in 2009 and is 20 cents per copy in 2010.  K&L Gates maintains a record of in-house copies through a computerized system.  This procedure requires an operator to key in a client's code number on a keypad attached to the copier.

Telephone:  K&L Gates incurred $114.33 in long distance telephone charges.

Air Courier:  K&L Gates incurred expenses in the amount of $140.16 in connection with air courier expenses to provide certain materials to parties in interest in a timely manner.

13

<u>Overtime Transportation</u>:   K&L Gates incurred actual out-of-pocket expenses in the amount of $40.00 in relation to local travel for attorneys working outside of regular business hours.

<u>Meals</u>:   K&L Gates incurred actual out-of-pocket expenses in the amount of $67.75 for a meal with counsel to the Official Committee of Unsecured Creditors after a Court hearing on, among other things, motions to use cash collateral of U.S. Bank and Metropolitan National Bank. The parties discussed the case generally, cash collateral use, and going-forward strategy. Counsel to the Debtors did not bill his time spent discussing these matters over lunch, which would have been approximately $200 greater than the cost of the lunch.

<u>Postage</u>:   K&L Gates incurred postage expenses in the amount of $2,319.01 in connection with service of pleadings filed by the Debtors, including service of fee applications, the claims bar date notice, the Plan and disclosure statement, and the confirmation order.

<u>Legal Research</u>:   K&L Gates incurred $3,980.82 in connection with conducting legal research on Lexis and Westlaw.

<u>Filing Fees</u>:   K&L Gates incurred $3,949.75 in charges relating to filing fees.  This primarily includes $3,117 in fees incurred for filing the three separate bankruptcy cases, as well as filing fees associated with filing a suggestion of bankruptcy in the litigation involving Brian Corrigan in Missouri and the costs of initiating adversary proceedings.

<u>Document Fees</u>:  K&L Gates incurred $319.90 in document fees to obtain certificates of good standing and similar documents from the Secretary of State in connection with the transactions contemplated under the Plan.

## EXPENSES FROM FIRST INTERIM APPLICATION

As discussed above, this Court's order granting the First Interim Application stated that "K&L Gates may seek allowance of the $4,465.70 in expenses for the months of August and September 2009, and the $440.25 in facsimile charges, in connection with a final fee application by providing the information requested by the Court at the hearing on the [First Interim] Application."  A copy of this Order is attached hereto as <u>Exhibit C</u>.  K&L Gates is only seeking allowance and authorization for payment of the $4,465.70 in expenses incurred, and is not seeking approval and allowance of $440.25 in facsimile charges.

Regarding the additional $4,465.70 in expenses requested in the First Interim Application, those amounts incurred in August and September, 2009 can be broken down as follows:  (i) $43.60 in photocopying charges at 10 cents/page; (ii) $67.80 in telephone charges; (iii) $35.24 in air courier expenses; (iv) $15.00 in overtime taxi charges; (v) $67.75 for meals, during which counsel did not bill its regularly hourly rate for case discussions with counsel to the Committee; (vi) $179.95 in postage costs; (vii) $939.36 in legal research charges; and (viii) $3,117.00 in filing fees to file all three Debtors' chapter 11 bankruptcy petitions.  All of these expenses incurred were reasonable and necessary, and all are already included and detailed in the "Expenses Incurred" section above.

## BENEFIT TO THE ESTATE

On behalf of the Debtors, and in furtherance of Debtors' duties pursuant to the Bankruptcy Code, K&L Gates took all necessary steps to advance the interests of the Debtors. K&L Gates has been involved in all aspects of these Chapter 11 Cases and ensured that the interests of the Debtors and their bankruptcy estates have been protected throughout.

As set forth in greater detail above in the discussion of fees spent on the Debtors' Plan and disclosure statement, K&L Gates prepared, confirmed, and effectuated a plan of reorganization that provides unsecured creditors with a greater distribution than they would have received in a liquidation scenario. Moreover, all of the secured lenders' claims have been paid in full or assumed under the Plan, whereas in a liquidation scenario such creditors would have risked not being paid in full.

Additionally, throughout these Chapter 11 Cases, K&L Gates assisted the Debtors with (i) obtaining continued use of cash collateral, (ii) ensuring that their employees continued to receive regular paychecks and benefits, (iii) avoiding an unperfected security interest of Debtor Sun Boxes, Inc.'s secured lender, (iv) removing a judgment lien of a former employee, and (v) responding to inquiries from their creditors regarding general business operations during the pendency of the bankruptcy cases. Most importantly, the K&L Gates was able to assist with the effectuating of the Debtors' Plan.

The foregoing services benefited the bankruptcy estates and, as such, the compensation and reimbursement of expenses requested herein are reasonable and should be allowed.

## REQUEST TO LIMIT AND SHORTEN NOTICE

Pursuant to Bankruptcy Rule 2002(a)(6), twenty-one days' notice of a request for compensation shall be given to the debtor, the trustee, all creditors, and indenture trustees if that request exceeds $1,000.00. The Debtors submit that notice here should be limited to: (a) counsel to the Official Committee of Unsecured Creditors; and (b) the Office of the United States Trustee. The Debtors submit that, under the circumstances here, no further notice of the relief requested herein should be required in light of the fact that the Debtors' creditors will not be harmed by the relief requested herein as they will receive the amounts set forth in the Plan, and

16

will not be affected by the amounts requested in this Application.  Thus, it would be burdensome and costly for the Debtors to provide notice to all creditors in this case.

Similarly, the Debtors assert that no parties will be harmed by shortening the notice period to eight days.  K&L Gates's and Official Committee of Unsecured Creditors' second interim fee applications are already set for hearing on May 18, 2010, and the Debtors intend to file a motion for a final decree that will also be set for hearing on May 18, 2010.  Ultimately, the Debtors hope to resolve all open issues at the hearing on May 18, 2010, and close these bankruptcy cases on such date.

In light of the nature of the relief requested, the Debtors submit that the notice requested and provided is sufficient.

**WHEREFORE**, K&L Gates respectfully requests that the Court enter an order:

(a)      allowing K&L Gates $205,865.00 in final compensation for the Application Period (which amount reflects the $630 reduction in fees requested in the First Interim Application) as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code;

(b)      allowing K&L Gates $12,674.44 in final reimbursable expenses for the Application Period (which amount reflects K&L Gates's withdrawal of its request for approval of $440.25 in facsimile charges from the First Interim Application) as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code;

(c)      authorizing payment to K&L Gates in the amount of $32,084.50 in reasonable and necessary fees and $311.27 in actual expenses for the period of February 1, 2010 through April 30, 2010;

17

(d)      authorizing payment to K&L Gates in the amount of $4,465.70 in reasonable and

necessary expenses for the months of August and September 2009, as requested in the First

Interim Application; and

(e)      granting such other and further relief this Court deems just and proper.

Dated:  May 10, 2010                          Respectfully submitted,

                                                        **SUN CONTAINER, INC., *et al*.**


                                                         /s/  Jeffrey M. Heller
                                                          One of their Attorneys

                                                        Harley J. Goldstein (No. 6256010)
                                                        Sven T. Nylen (No. 6278148)
                                                        Jeffrey M. Heller (No. 6294314)
                                                        K&L GATES LLP
                                                        70 West Madison Street, Suite 3100
                                                        Chicago, Illinois 60602-4207
                                                        Telephone:  (312) 372-1121
                                                        Facsimile:  (312) 827-8000